UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANAPOLIS FRUIT COMPANY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-02196-TWP-MG |
| ) | |
| GREEN BEAN DELIVERY, LLC, t/a GREEN ) | |
| B.E.A.N. DELIVERY, f/k/a GREEN B.E.A.N. ) | |
| INDIANA LLC, ) | |
| MATTHEW B. EWER, and ) | |
| B.E.A.N., LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

Before the Court is Plaintiff Indianapolis Fruit Company, LLC's ("Indy Fruit") Motion for a Temporary Restraining Order ("TRO") (Filing No. 4)[1] pursuant to Federal Rule of Civil Procedure 65 against Defendants (1) Green Bean Delivery, LLC, t/a Green B.E.A.N. Delivery, f/k/a Green B.E.A.N. Indiana, LLC ("Green Bean"), (2) B.E.A.N., LLC ("B.E.A.N.") and (3) Matthew B. Ewer ("Ewer") as the principal and chief executive officer of Green Bean and B.E.A.N. (collectively, the "Defendants"). Indy Fruit claims the Defendants violated § 5(c) of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA") (Filing No. 1). The Defendants have yet to respond. Based upon Indy Fruit's affidavit (Filing No. 6) and its counsel's declaration (Filing No. 20), the Court concludes that Indy Fruit has met its burden by

---

[1] Plaintiff has also filed a Motion for Preliminary Injunction (Filing No. 3), however, that Motion is not yet ripe for ruling. The core difference between a temporary restraining order and a preliminary injunction is that the former may be issued "before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *see Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs. S.C.*, 964 F.2d 599, 600 (7th Cir. 1992) (finding that the essence of a temporary restraining order is "its brevity, its ex parte character, and ... its informality," whereas a preliminary injunction: the latter is appealable, the former is not). Considering the Defendants have yet to respond, let alone be heard, the Court only addresses Indy Fruit's Motion for a TRO.

demonstrating entitlement to entry of a TRO against the Defendants. Therefore, Indy Fruit's Motion for a TRO (Filing No. 4) against the Defendants is **granted**.

## I. FINDINGS OF FACTS

Indy Fruit is a wholesale buyer and seller of perishable agricultural commodities ("produce") and is subject to and licensed under PACA, as amended, 7 U.S.C. § 499a, *et seq*. (Filing No. 1; Filing No. 6-1). As the principal and chief executive officer of B.E.A.N.—the parent company to Green Bean—Ewer oversees and controls Green Bean's operation as a full-service online grocery and a home delivery service (Filing No. 6 at ¶ 4-6). Green Bean was at all times relevant licensed under and subject to PACA as a dealer. *Id*. at ¶ 4. Between January 18, 2022, and November 1, 2022, Indy Fruit sold produce to Green Bean having an agreed upon value of $456,846.21. *Id*. at ¶ 9. Defendants accepted the produce reflected in the account statements and invoices without protest. *Id*. at ¶ 10. Defendants received invoices from Indy Fruit that contained the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(Filing No. 6-6; Filing No. 6-7; Filing No. 6-8.)

There is no evidence that any of the invoices were returned undeliverable or that Indy Fruit had any indication that the invoices were not received by the Defendants (Filing No. 6). The invoices specified a payment term of "Net 30 Days" and stated that the commodities are subject to the trust provisions of PACA (Filing No. 6-6; Filing No. 6-7; Filing No. 6-8). In or about June 2022, Green Bean admitted to Indy Fruit that it was having cash flow issues and trouble making payroll (Filing No. 6 at ¶ 12). Ewer later advised Indy Fruit that his companies were experiencing

financial difficulties and that he could not pay Indy Fruit unless Green Bean's assets were liquidated or sold. *Id*. at ¶ 13. On November 10, 2022, Indy Fruit received an email from Ewer advising it that he planned to liquidate Green Bean, B.E.A.N., and another affiliate company, Tiny Footprint Distribution, LLC, and cease operations on November 18, 2022. *Id*. at ¶ 14.

Based on Defendants' admission that it was liquidating Green Bean, B.E.A.N. and its affiliate, and ceasing operations on November 18, 2022, Indy Fruit felt that the PACA trust assets in Defendants' possession had been dissipated and/or were threatened with dissipation and that Defendants lacked the ability to make prompt payment to Indy Fruit as required by PACA. *Id*. at ¶ 15. Therefore, on November 14, 2022, Indy Fruit sued Defendants under PACA for (1) injunctive relief, (2) failure to pay trust funds, (3) failure to pay promptly, (4) unlawful dissipation of trust assets by a corporate official, (5) breach of contract, (6) declaratory judgment, and (7) interest and attorneys' fees (Filing No. 1). Soon thereafter, Indy Fruit filed a Motion for Preliminary Injunction (Filing No. 3) and a Motion for a TRO (Filing No. 4).

## II.    LEGAL STANDARD

A court may grant an order pursuant to an *ex parte* request only under extremely limited circumstances. *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 321 (7th Cir.1984). Under Federal Rule of Civil Procedure 65, the movant's attorney must certify in writing his efforts to give notice and the reasons that notice should not be required,[2] and the court must conclude that the movant will suffer irreparable injury before the adverse party can be heard. Fed. R. Civ. P. 65(b). Under Rule 65(b)(2), a TRO may last up to 14 days, unless before that time expires, it is extended for another 14 days for good cause.

---

[2] See Filing No. 20.

The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008). This analysis is the same to determine if a TRO is warranted. *Gray v. Orr*, 4 F. Supp. 3d 984, 989 n.2 (N.D. Ill. 2013). To warrant a TRO, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) plaintiff will suffer irreparable harm if the TRO is not granted. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). If these elements are satisfied, the Court must then balance the harm to the plaintiff if the restraining order is denied against the harm to the defendant if the restraining order is granted. *Id*. The greater the movant's likelihood of success on the merits, "the less strong a showing" the movant "must make that the balance of harm is in its favor." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

### III. CONCLUSIONS OF LAW

The Court concludes that Indy Fruit has met its burden by demonstrating a likelihood of success on the merits coupled with the likelihood of irreparable injury and a lack of adequate legal remedy. Therefore, the entry of a TRO against the Defendants is warranted.

**A.     The Perishable Agricultural Commodities Act**

Given the perishable nature of produce, Congress believed it necessary to protect suppliers from getting stiffed by buyers as it is futile to repossess rotting vegetables. PACA helps solve that problem by regulating the nation's produce industry and provides, among other things, that perishable agricultural commodities received by a licensed dealer, as well as the proceeds from sales of those commodities, are held in trust for the benefit of unpaid suppliers until full payment has been made. 7 U.S.C. § 499e(c)(2). This floating trust is automatically created when the dealer accepts the goods so long as the supplier complies with the specific notice requirements set out in

7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f).  *See Superior Sales, Inc. v. Bakker Produce, Inc.*, 2013 WL 214251, at *1 (citing *Greg Orchards & Produce, Inc. v. Roncone*, 180 F.3d 888, 890–91 (7th Cir.1999)).

The trust must be maintained "in a manner that such assets are freely available to satisfy outstanding obligations to sellers."  7 C.F.R. § 46.46(d)(1).  Failure to maintain the trust, including dissipation of assets, is unlawful.  *See* 7 U.S.C. § 499b(4); 7 C.F.R. § 46.46(d)(1).  This Court has jurisdiction over "actions by trust beneficiaries to enforce payment from the trust."  7 U.S.C. § 499e(c)(5).  The entry of an injunction assures retention of the trust assets under the control of this Court, which is specifically vested with jurisdiction over the trust.  7 U.S.C. § 499e(c)(5) ("The several district courts of the United States are vested with jurisdiction specifically to entertain ... actions by trust beneficiaries to enforce payment from the trust."); *see Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002) (stating that "PACA trust rights may be enforced ... through a court action for breach of fiduciary trust, 7 U.S.C. § 499e(c)(5) ... [which] permits recovery against both the corporation and its controlling officers ... [t]he principal justifications Congress has given for granting such generous protection for sellers of produce are (1) the need to protect small dealers who require prompt payment to survive and (2) the importance of ensuring the financial stability of the entire produce industry.").

Sellers must meet certain conditions to be eligible for the protection of a PACA trust. Under PACA, buyers must make "full payment promptly."  7 U.S.C. § 499b(4).  The general deadline is ten days after receipt of the produce.  7 C.F.R. § 46.2(aa).  Buyers and sellers can agree to more time in writing.  *Id*. § 46.2(aa)(11).  The maximum time is thirty (30) days.  *Id*. § 46.46(e)(2).  To preserve the trust benefits, the seller may file a notice of intent including (1) the name and address of the beneficiary and debtor, (2) the date of transaction, commodity, invoice

5

price, and terms of payment (if appropriate), (3) the date of receipt of notice that payment has been dishonored (if appropriate) and (4) the amount past due and unpaid. *Id*. § 46.46(f)(1). Notice of the intent to preserve the trust must generally be given within 30 days. *Id*. § 46.46(f)(2). Alternatively, the seller may use an invoice to preserve the trust benefits if it includes (1) the terms of payment, if they differ from the standard, and (2) the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 C.F.R. § 46.46(f)(3).

**B.**     **Likelihood of Success on the Merits**

Indy Fruit argues that it has demonstrated a likelihood of success on the merits under the provisions of PACA (Filing No. 5 at 9-10). The Court agrees. In order to assert a valid PACA trust claim against Defendants, Indy Fruit must establish that: "(1) it qualifies for protection under PACA as a produce supplier; (2) it provided the requisite notice of intent to preserve its interest in the statutory trust; and (3) the defendant acted inconsistent with its duty to maintain the trust and ensure any assets held in trust were freely available to fulfill any outstanding obligations to trust beneficiaries." *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, 2017 WL 6059971, at *5 (N. D. Ill. Dec. 7, 2017) (citing 7 U.S.C. § 499 *et. seq*.).

Here, Indy Fruit has met its burden of demonstrating a likelihood of success on the merits. The first element—it qualifies for protection under PACA—is met by Indy Fruit because it is a PACA-licensed supplier of produce and has shown that the transactions set out in the Complaint fall within the purview of PACA since they involve perishable agricultural commodities that traveled through interstate commerce (Filing No. 6-1 at 1-4). The Defendants are also "dealers"

subject to and licensed under PACA (Filing No. 6 at ¶ 4-6). Between January 18, 2022, and November 1, 2022, Indy Fruit sold produce to Defendants with an agreed upon value of $456,846.21. *Id*. at ¶ 9. When Indy Fruit delivered the produce to Defendants, it became a beneficiary in a statutory trust designed to assure payment. 7 U.S.C. § 499e(c)(2). Despite repeated demands, Defendants have not paid the amounts due (Filing No. 6 at ¶ 9).

The second element—defendant provided requisite notice of intent to preserve its interest in the statutory trust—is met because Indy Fruit sent the Defendants contemporaneous invoices that included a term not to exceed thirty (30) days and a statement advising Defendants that Indy Fruit was preserving trust eligibility pursuant to 7 U.S.C. § 499(e)(c) (Filing No. 6-6; Filing No. 6-7; Filing No. 6-8). The Court finds that these invoices are Indy Fruit's "ordinary and usual" invoices. *See* 7 C.F.R. § 46.46(a)(5) (defining "ordinary and usual billing or invoice statements" as "communications customarily used between parties to a transaction in perishable agricultural commodities in whatever form, documentary or electronic, for billing or invoicing purposes.").

The third element—defendant acted inconsistent with its duty to maintain the trust—is also met because the Defendants communicated to Indy Fruit that they were having cash flow issues, they were having trouble making payroll, and they could not pay Indy Fruit unless Green Bean's assets were liquidated or sold (Filing No. 6 at ¶ 12-14).

Therefore, there is a likelihood that Indy Fruit will succeed on the merits.

C.   **Likelihood of Irrepealable Harm**

Indy Fruit maintains that it will be irreparably harmed if the Court does not enter a TRO. The Court agrees. Defendant Ewer has indicated to Indy Fruit that Defendant Green Bean encountered extreme cash flow problems, had trouble making payroll, and that he planned to liquidate Green Bean, B.E.A.N., and another affiliate company, Tiny Footprint Distribution, LLC

7

([Filing No. 6 at 14](#)).  Ewer also indicated that the planned to cease operations of his businesses on November 18, 2022.  *Id*.  Given these statements, the Court finds sufficient grounds to constitute a likelihood that Indy Fruit will suffer irreparable injury.  *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 134-35 (3rd Cir. 2000) (finding irreparable injury and establishing TRO after produce was sold to plaintiff and plaintiff informed creditor that it lacked the ability to pay the debt).  Defendants' lack of any funds to make even partial payments to Indy Fruit suggests that the trust assets have been or are being dissipated.

Accordingly, Indy Fruit has demonstrated a likelihood of irreparable harm to support an entry of a TRO.

**D.      No Adequate Remedy at Law**

"[O]nce the PACA trust is dissipated; it is almost impossible for a beneficiary to obtain recovery."  *See Superior Sales, Inc*, 2013 WL 214251 at *2 (citing *Tanimura*, 222 F.3d at 139.  Therefore, "the dissipation of PACA trust assets can render money damages inadequate, thereby necessitating equitable relief, especially when the dissipation will clearly result in the debtor's inability to make payment."  *Tanimura*, 222 F.3d at 139-40 ("Congress specifically singled out the potential harm to unpaid sellers in the perishable agricultural commodities industry for special protection under PACA such that no unpaid supplier with perfected rights should be relegated to seek money damages only, especially when dealing with a financially unstable debtor who is dissipating trust assets.").  Therefore, the Court finds that there is no adequate remedy at law because once the PACA trust is dissipated, it is unlikely that Indy Fruit can obtain an adequate recovery.

E.   **Balancing of Equities**

Indy Fruit maintains that the balance of equities weighs in its favor because it is merely asking the status quo to be maintained by requiring Defendants to satisfy their fiduciary duties as trustees of the PACA trust (Filing No. 5 at 11). The Court agrees. There is little harm to Defendants in granting a TRO, which only requires Defendants to do that which they are required to do under the statute, *i.e.*, maintain the trust since they have not paid Indy Fruit's invoices in full. 7 U.S.C. § 499e(c)(2). Accordingly, the balance of equities weighs in favor of Indy Fruit.

F.   **Public Interest**

Indy Fruit argues that granting a TRO against the Defendants is in the public's interest (Filing No. 5 at 11-12). The Court agrees. The public interest is furthered by the granting of a TRO because "Congress intended to protect small farmers and growers who were especially vulnerable to the practices of financially irresponsible commission merchants, dealers, and brokers." *Tanimura*, 222 F.3d at 135; 7 U.S.C. § 499e(c)(1) ("This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest."). Therefore, based on these facts, entry of a TRO would serve the public interest.

G.   **Bond**

Indy Fruit asks that no bond be imposed because Defendants already have $456,846.21 worth of trust assets belonging to Indy Fruit as security for the imposition of a TRO (Filing No. 5 at 12). The Court agrees. Federal Rule of Civil Procedure 65(c) provides that a court may only issue a TRO "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Because Defendants have not disputed the $456,846.21 due and owed, and

they have made no showing of any hardship, the Court concludes no bond or security is required of Indy Fruit.

## IV. CONCLUSION

Based on the reasoning above, the Court **GRANTS** Indy Fruit's Motion for a Temporary Restraining Order ([Filing No. 4](#)). Accordingly, it is hereby,

**ORDERED** that, sufficient reason having been shown, pending the hearing on Plaintiff's application for preliminary injunction, pursuant to Fed. R. Civ. P. 65, Defendants, their customers, agents, employees, officers, directors, subsidiaries, related entities, assigns, and banking institutions are **TEMPORARILY ENJOINED AND RESTRAINED** from alienating, dissipating, paying over or assigning any assets of Green Bean, B.E.A.N., or its subsidiaries or related companies, except for payment to Plaintiff, until further order of this Court or until Defendants pay Plaintiff the amount of $456,846.21 by bank check or wire transfer, at which time this Order is dissolved; and it is further

**ORDERED** that in the event Defendants fail to pay Plaintiff the amount of $456,846.21 by bank check or wire transfer within two (2) business days of service of this Order, then Defendants shall file with this Court, with a copy to Plaintiff's counsel, accountings which identify the assets and liabilities and accounts receivable reports of Green Bean and B.E.A.N., signed under penalty of perjury; and that Defendants shall also supply to Plaintiff's attorney, within five (5) days from the date of this Order, any and all documents in their possession, custody, or control related to the assets and liabilities of Green Bean and B.E.A.N. and its related and subsidiary companies, including but not limited to the most recent balance sheets, profit/loss statements, accounts receivable reports, account payable reports, accounts paid records, and income tax returns and bank statements with cancelled checks for the last ninety (90) days; and it is further

**ORDERED** that bond shall be waived in view of Defendants now holding $456,846.21 worth of Plaintiff's assets; and it is further

**ORDERED** that service of a copy of this Order and the papers upon which it is based, together with the Summons and Complaint, by Federal Express or other nationally recognized overnight delivery service upon the Defendants on or before Tuesday, November 22, 2022, shall be deemed good and sufficient service thereof; and it is further

This Temporary Restraining Order shall remain in effect for **fourteen (14)** days after the date of issuance, or until any earlier additional order of the Court, or until a later date if Defendants consent to a longer extension.

Plaintiff's Motion for Preliminary Injunction remains scheduled for telephone status conference on **Wednesday, November 23, 2022**, at 11:30 a.m. (Eastern).

**SO ORDERED**

Date:   11/18/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mark A. Hatfield
Van Valer Law Firm, LLP
mark@vanvalerlaw.com

Mary Jean Fassett
MCCARRON & DIESS
mjf@mccarronlaw.com